# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 53132-1-II |
| Respondent, | |
| v. | PUBLISHED OPINION |
| HOWARD ERNEST SANFORD, | |
| Appellant. | |

MAXA, J. – Howard Sanford was convicted of first degree rape of a child, first degree child molestation, second degree rape of a child, and second degree child molestation. He argues that the convictions violate double jeopardy principles. We hold that the rape and molestation convictions violate double jeopardy because the trial court did not instruct the jury that its verdict must be based on separate and distinct acts for each count and the State did not make it manifestly apparent that the jury had to base the convictions on separate and distinct acts. Accordingly, we remand for the trial court to vacate Sanford's first degree child molestation and second degree child molestation convictions and for resentencing.

## FACTS

OS disclosed to multiple friends that Sanford had sexually abused her. The State charged Sanford with first degree rape of a child and first degree child molestation for incidents that

occurred before OS turned 12 years old, and second degree rape of a child and second degree molestation for incidents that occurred after OS turned 12 years old.[1]

At trial, OS testified that Sanford put his penis in her mouth multiple times when she was nine and also when she was 10 or 11. OS also testified that this occurred almost daily after she turned 12 years old. He also at times licked her vagina. The abuse continued until around the time OS turned 14.

Lisa Wahl, an advanced registered nurse practitioner with Providence Sexual Assault and Child Maltreatment Clinic, interviewed OS and testified about her interview. She testified that during her medical evaluation, OS described "penile oral penetration" and "oral vaginal activity." 2 Report of Proceedings (RP) (Jan. 22, 2019) at 251-52. When Wahl asked OS if anything had gone into or on her vagina, OS responded that Sanford's penis "was on her vagina and around her vagina lips." 2 RP (Jan. 22, 2019) at 252. Wahl also stated that OS described a time when she was 10 years old that Sanford ejaculated in her mouth.

The trial court gave instructions on the two child rape charges stating that a person commits child rape when the person has sexual intercourse with a child and that "[s]exual intercourse means any act of sexual contact between persons involving the sex organs of one person and the mouth . . . of another." Clerk's Papers (CP) at 47. The court gave instructions on the two child molestation charges stating that a person commits child molestation when the person has sexual contact with a child and that "[s]exual contact means any touching of the sexual or other intimate parts of a person done for the purpose of gratifying sexual desires of either party." CP at 52.

---

[1] The State also charged Sanford with first degree incest and fourth degree assault. Those charges are not an issue in this appeal.

The trial court also gave instructions that the jury must decide each count separately, and that although the State had alleged multiple acts of rape and molestation, the jury was required to unanimously agree as to which act had been proved. However, the trial court did not instruct the jury that a finding of guilty for each offense must be based on separate and distinct acts.

During her closing argument, the prosecutor argued that the sexual intercourse supporting the child rape counts was Sanford putting his penis in OS's mouth. The prosecutor later described the child molestation events, stating, "The reason the defendant put his penis in her mouth was for sexual gratification." 2 RP (Jan. 22, 2019) at 322.

The jury found Sanford guilty of first degree rape of a child and first degree child molestation and of second degree rape of a child and second degree molestation. The trial court imposed concurrent sentences for all four convictions. Sanford appeals his two child molestation convictions.

## ANALYSIS

A.   STATUTORY ELEMENTS OF CHILD RAPE AND CHILD MOLESTATION

A person is guilty of first degree rape of a child "when the person has sexual intercourse with another who is less than twelve years old and not married to the perpetrator and the perpetrator is at least twenty-four months older than the victim." RCW 9A.44.073(1). A person is guilty of second degree rape of a child "when the person has sexual intercourse with another who is at least twelve years old but less than fourteen years old." RCW 9A.44.076(1). "Sexual intercourse" is defined as any penetration however slight, or any sexual contact between one person's sex organs and the mouth or anus of another. RCW 9A.44.010(1)(a), (c).

A person is guilty of first degree child molestation "when the person has, or knowingly causes another person under the age of eighteen to have, sexual contact with another who is less

3

than twelve years old and not married to the perpetrator and the perpetrator is at least thirty-six months older than the victim." RCW 9A.44.083(1). A person is guilty of second degree child molestation "when the person has sexual contact with another who is at least twelve years old but less than fourteen years old." RCW 9A.44.086(1). "Sexual contact" is defined as any touching of the sexual or other intimate parts of a person done for the purpose of gratifying sexual desire. RCW 9A.44.010(2).

B.      LEGAL PRINCIPLES – DOUBLE JEOPARDY

The Fifth Amendment to the United States Constitution and article I, section 9 of the Washington Constitution protect a defendant against multiple punishments for the same offense. *State v. Mutch*, 171 Wn.2d 646, 661, 254 P.3d 803 (2011). A double jeopardy claim may be raised for the first time on appeal. *Id.* We review double jeopardy claims de novo. *Id.* at 661-62.

Double jeopardy is not implicated when the defendant is charged with both child rape and child molestation based only on evidence of penetration because in that situation rape and molestation are separate offenses. *State v. Land*, 172 Wn. App. 593, 600, 295 P.3d 782 (2013). "The touching of sexual parts for sexual gratification constitutes molestation up until the point of actual penetration; at that point, the act of penetration alone, regardless of motivation, supports a separately punishable conviction for child rape." *Id.* This court reached the same result in *State v. Wilkins*, 200 Wn. App. 794, 804-08, 403 P.3d 890 (2017).

However, double jeopardy potentially is implicated when the defendant is charged with both child rape and child molestation based only on oral/genital contact rather than on penetration. *Land*, 172 Wn. App. at 600.

> [W]here the only evidence of sexual intercourse supporting a count of child rape is evidence of sexual contact involving one person's sex organs and the mouth or anus

of the other person, that single act of sexual intercourse, if done for sexual gratification, is both the offense of molestation and the offense of rape. In such a case, the two offenses are not separately punishable. They are the same *in fact and in law* because all the elements of the rape as proved are included in molestation, and the evidence required to support the conviction for molestation also necessarily proves the rape.

*Id.*

When there is a possibility that the jury could convict the defendant of both child rape and child molestation based on the same acts of oral/genital contact, the trial court must instruct the jury that its verdict must be based on separate and distinct acts for each charge. *Id.* at 603; *see generally Mutch*, 171 Wn.2d at 662-63. The failure to give such an instruction does not necessarily mean that multiple convictions violate double jeopardy. *Mutch*, 171 Wn.2d at 663. But the failure to give a separate and distinct acts instruction in this situation creates the potential that the defendant received multiple punishments for the same offense. *Id.*

To determine whether flawed jury instructions resulted in a double jeopardy violation, we may review the entire trial record. *Id.* at 664. However, "our review is rigorous and among the strictest." *Id.* In the absence of a separate and distinct acts instruction, there is a double jeopardy violation after "[c]onsidering the evidence, arguments, and instructions, if it is not clear that it was '*manifestly apparent* to the jury that the State [was] not seeking to impose multiple punishments for the same offense' and that each count was based on a separate act." *Id.* (alteration in original) (quoting *State v. Berg*, 147 Wn. App. 923, 931, 198 P.3d 529 (2008)).

C.   DOUBLE JEOPARDY ANALYSIS

Here, the only evidence presented at trial of both child rape and child molestation was that Sanford engaged in oral/genital contact involving his penis and OS's vagina. There was no evidence of vaginal penetration. And the trial court did not give a separate and distinct acts instruction. Therefore, the child rape and child molestation conviction violated double jeopardy

unless a review of the record shows that it was manifestly apparent to the jury that the State was not attempting to impose separate penalties for the same conduct. *Mutch*, 171 Wn.2d at 664.

### 1. Applicable Cases

Three cases have addressed whether the record satisfied the "manifestly apparent" test. In *Mutch*, the defendant was convicted of five counts of rape, which he contended were based on a single criminal act. *Id.* at 662. Because the trial court failed to give a separate and distinct acts instruction, there was a potential that the defendant received multiple punishments for the same offense. *Id.* at 662-63. However, the court concluded that it was "manifestly apparent that the jury found him guilty of five separate acts of rape" because the victim testified to five separate acts of rape and the State discussed five separate episodes in its closing arguments. *Id.* at 665.

In *Land*, the defendant was convicted of one count of child rape and one count of child molestation involving the same child and charging period. 172 Wn. App. at 597. The victim testified that that the defendant put his finger inside her vagina on multiple occasions and that he also touched her breasts and lower parts. *Id.* at 597-98. The court agreed with the defendant that the trial court should have given a separate and distinct acts jury instruction. *Id.* at 597. But the court concluded that it was "manifestly apparent the State was not seeking to impose multiple punishments for the same offense." *Id.* at 603. The court emphasized that the prosecutor's argument expressly distinguished between the rape, which involved penetration with the defendant's fingers, and the molestation, which involved touching the victim's breasts and sexual contact with the vaginal region without penetration. *Id.* at 602.

In *State v. Peña Fuentes*, the defendant was charged with and convicted of one count of child rape and two counts of child molestation. 179 Wn.2d 808, 823, 318 P.3d 257 (2014). The court noted that there was no separate and distinct acts instruction. *Id.* The court also noted that

the jury instructions for molestation required "sexual contact" and also defined sexual intercourse for purposes of rape to include "sexual contact" involving the sex organs of one person and the mouth of another. *Id.* at 824 n.3. Therefore, there was a possibility that the jury could have convicted the defendant of rape based on the same incidents that formed the basis of the molestation convictions. *Id.* at 823-24.

However, the court concluded, "It is manifestly apparent that the convictions were based on separate acts because the prosecution made a point to clearly distinguish between the acts that would constitute rape of a child and those that would constitute child molestation." *Id.* at 825. The prosecutor identified two specific acts that supported the rape conviction and clearly divided the defendant's behaviors between those acts involving penetration and other inappropriate acts that constituted molestation. *Id.*

2. "Manifestly Apparent" Analysis

*Mutch* charges us to consider the evidence, jury instructions, and argument to determine whether it was manifestly apparent that Sanford's rape and molestation convictions were based on separate acts. 171 Wn.2d at 664. And our review must be rigorous and strict. *Id.*

First, OS's trial testimony did not differentiate between acts of rape and acts of molestation. She testified that Sanford put his penis in her mouth and licked her vagina multiple times for several years, all of which would constitute both rape and molestation. The only evidence of conduct that would constitute only molestation and not rape was testimony from the nurse practitioner who interviewed OS, who said that OS referenced an incident in which Sanford's penis touched her vagina.

Second, the jury instructions essentially informed the jury that the same acts that could constitute rape also could constitute molestation. As in *Peña Fuentes*, the instructions defined

7

sexual intercourse for purposes of rape to include "sexual contact" involving the sex organs of one person and the mouth of another, and the instructions for molestation also required "sexual contact." CP at 47, 51, 58. And as noted above, there was no instruction that a finding of guilty for each offense must be based on separate and distinct acts.

Third, in discussing rape and sexual intercourse during closing argument the prosecutor emphasized the evidence that Sanford almost daily put his penis in OS's mouth. She referenced the specific incident where Sanford ejaculated in OS's mouth when she was 10, which constituted first degree child rape. The prosecutor also noted that the last time OS remembered being forced to perform oral sex was when she was 13, which constituted second degree rape.

Regarding molestation, the prosecutor stated, " 'Sexual contact' means any touching of the sexual or other intimate parts of a person done for the purpose of gratifying sexual desires of either party. Ladies and gentlemen, I submit to you that you heard a lot about sexual gratification, okay? *The reason the defendant put his penis in her mouth was for sexual gratification*." 2 RP (Jan. 22, 2019) at 322 (emphasis added). The prosecutor also stated that the incident the nurse practitioner described when Sanford's penis touched OS's vagina constituted child molestation.

In rebuttal, the prosecutor did not attempt to distinguish between rape and molestation. Instead, she referred to both offenses together as sexual abuse: "This case is about whether this man, Howard Sanford, sexually abused [OS] over a period of years." 2 RP (Jan. 22, 2019) at 340.

Unlike in *Mutch*, *Land* and *Peña Fuentes*, the prosecutor here did not make it clear in closing argument that the State was relying on different acts to prove rape and to prove molestation. To prove rape, the prosecutor referenced the multiple times that Sanford put his

penis in OS's mouth.  The two specific incidents of rape the prosecutor mentioned involved

Sanford putting his penis in OS's mouth.  Significantly, all these incidents also met the definition

of molestation.  And then the prosecutor emphasized that the reason Sanford put his penis in

OS's mouth was for sexual gratification, which is relevant only to the molestation charges.  In

other words, the prosecutor expressly relied on the same acts to support both the rape charges

and the molestation charges.

The prosecutor did state that the incident the nurse practitioner described in which

Sanford's penis touched OS's vagina constituted molestation.  But the prosecutor did not argue

that this incident was the only basis for one of the molestation charges.

Our rigorous and strict review of the record shows that it was not manifestly apparent to

the jury that the State was not attempting to impose separate penalties on Sanford for the same

conduct.  Therefore, we hold that the convictions of both first degree child rape and first degree

child molestation and the convictions of both second degree child rape and second degree child

molestation violate double jeopardy.

CONCLUSION

We remand for the trial court to vacate Sanford's first degree child molestation and

second degree child molestation convictions and for resentencing.

_____
MAXA, J.


I concur:

_____
SUTTON, J.

9

No. 53132-1-II

LEE, C.J. (dissenting) —I disagree with the Majority that a rigorous review of the record requires a reversal given the facts of this case. Instead, a rigorous review of the testimony, jury instructions, and arguments make it manifestly apparent that the State was not seeking to impose multiple punishments for the same offense; therefore, the lack of a separate and distinct jury instruction did not violate Sanford's double jeopardy rights. Accordingly, I respectfully dissent.

FACTS

I agree with the Majority's outline of the facts. Additional pertinent facts that must be considered in this double jeopardy analysis include:

A.    JURY INSTRUCTIONS

In addition to the to-convict instructions mentioned in the Majority's opinion, the trial court instructed the jury that "[a] separate crime is charged in each count. You must decide each count separately. Your verdict on one count should not control your verdict on any other count." Clerk's Papers (CP) at 40.

The trial court further instructed the jury that on the first degree rape of a child, second degree rape of a child, first degree child molestation, and second degree child molestation charges, the jury "must unanimously agree as to which act has been proved."[2] CP at 49, 53, 56, 59.

And the trial court instructed the jury that

> The lawyers' remarks, statements, and arguments are intended to help you understand the evidence and apply the law. It is important, however, for you to remember that the lawyers' statements are not evidence. The evidence is the testimony and the exhibits. The law is contained in my instructions to you. You must disregard any remark, statement, or argument that is not supported by the evidence or the law in my instructions.

CP at 38.

---

[2] *State v. Petrich*, 101 Wn.2d 566, 683 P.2d 173 (1984), *abrogated in part on other grounds by State v. Kitchen*, 110 Wn.2d 403, 405-06, 756 P.2d 105 (1988).

10

The trial court did not instruct the jury that each offense must be based on a separate and distinct act, nor does our record show Sanford proposed such an instruction.

B.     PROSECUTOR'S CLOSING ARGUMENT

During her closing argument, the prosecutor first described the sexual intercourse related to the rape of a child counts, stating, "You heard testimony that on an almost daily basis [Sanford] was having [OS] perform oral sex on him." 2 VRP (Jan. 22, 2019) at 319. The prosecutor stated that the sexual intercourse definition must be used for counts 1 and 3. The prosecutor then explained that the testimony showed that the events occurred both before and after OS turned 12 years old and that the jury needed to be "unanimous as to one particular act." 2 VRP (Jan. 22, 2019) at 321.

The prosecutor later described the child molestation charges, stating, "'Sexual contact' means any touching of the sexual or other intimate parts of a person done for the purpose of gratifying the sexual desires of either party." 2 VRP (Jan. 22, 2019) at 322. The prosecutor also pointed to the incident OS told Nurse Wahl about and stated, "That fits the definition of child molestation, of sexual contact. 'Sexual contact' is used in Counts 2 and 4." 2 VRP (Jan. 22, 2019) at 322-23.

The prosecutor displayed several slides to the jury. One defined sexual intercourse as set forth above in the Majority's opinion and stated that this applies to "Counts 1 and 3 [rape charges]," 2 VRP (Jan. 22, 2019) at 319. Another slide defined sexual contact as set forth in the Majority's opinion and stated that it applies to "Counts 2 and 4 [molestation charges]" 2 VRP (Jan. 22, 2019) at 323.

During her rebuttal closing argument, the prosecutor pointed out that the abuse had occurred over years, stating, "Remember the testimony. Remember what [OS] told you about the

abuse that she suffered over years at the hands of this man, and find [Sanford] guilty." 2 VRP (Jan. 22, 2019) at 341.

C.    SANFORD'S DEFENSE

Sanford's defense was that OS was not credible. Sanford did not challenge the number of incidents OS testified to or whether the incidences overlapped.

ANALYSIS

We are required to look at the entire record in determining whether the lack of a separate and distinct instruction violates double jeopardy. When that is done, it is manifestly apparent that the State was not seeking to impose multiple punishments for the same offense.

A.    LEGAL PRINCIPLE S

When multiple counts are charged for the same time period, instructions that do not inform the jury that each crime requires proof of a separate and distinct act can create the potential for double jeopardy. *State v. Mutch*, 171 Wn.2d 646, 663, 254 P.3d 803 (2011). To determine whether the lack of a separate and distinct instruction results in a double jeopardy violation, we look to the entire trial record, including the evidence, arguments, and instructions. *Id*. at 664.

Where the testimony, arguments, and jury instructions make manifestly apparent that the State was not seeking to impose multiple punishments for the same offense, there is no double jeopardy violation. *State v. Land*, 172 Wn. App. 593, 602-03, 295 P.3d 782, *review denied*, 177 Wn.2d 1016 (2013). Additionally, when deciding whether an instructional error infringes on double jeopardy, the reviewing court may look to whether the defendant "chose the strategy of attacking [the victim's] credibility" rather than challenging "the number of incidents or whether they overlapped." *State v. Pena-Fuentes*, 179 Wn.2d 808, 825, 318 P.3d 257 (2014).

No. 53132-1-II

B.      NO DOUBLE JEOPARDY VIOLATION

1.      Testimony

OS testified to numerous incidences, both before and after she turned 12 years old. Stanford began placing his penis in OS's mouth when she was nine years old. He stopped for a while but resumed when she was 10 or 11. After OS turned 12 years old, OS testified that Sanford would, almost daily, have her suck his penis or he would lick her vagina while she sucked his penis. The evidence at trial clearly shows numerous instances of sexual intercourse and sexual contact. Certainly, the great number of incidences testified to by OS meet the definition of child rape and child molestation to support the mere four instances that were charged in this case.

2.      Jury Instructions

We next look to the jury instructions. Here, the trial court provided clear to-convict jury instructions regarding first and second degree child rape, clearly delineating the degree of the crime by OS's age at the time of the incident. The instructions informed the jury that it must find Sanford "had sexual intercourse" with OS to support the rape charges. CP at 50, 57. The instructions also informed the jury that "[s]exual intercourse means any act of sexual contact between persons involving the sex organs of one person and the mouth . . . of another." CP at 47.

The trial court also provided clear to-convict jury instructions regarding first and second degree child molestation; again delineating the degree of the crime by OS's age at the time of the incident. The instructions informed the jury that it must find Sanford "had sexual contact" with OS. CP at 54, 60. The instructions also informed the jury that "[s]exual contact means any touching of the sexual or intimate parts of a person done for the purpose of gratifying sexual desires of either party." CP at 52.

13

In addition, the trial court told the jury that a separate crime is charged in each count, that the jury must decide each count separately, and that it must unanimously agree as to which act had been proven for each count charged. The trial court also instructed the jury that the prosecutor's arguments are not evidence or the law, that the evidence is the testimony and exhibits, that the law is found in the court's instructions to the jury, and that the jury should disregard anything the prosecutor said that is not supported by the evidence or the law in the court's instructions to the jury.

Viewing the instructions as a whole, the instructions specified that a separate crime is charged in each count and that the jury had to be unanimous as to a particular act for each separate specified crime. And the jury was instructed disregard anything the prosecutor said that was not supported by the evidence or the court's instructions on the law. We presume that the jury follows the court's instructions. *State v. Lamar*, 180 Wn.2d 576, 586, 327 P.3d 46 (2014).

3.     Arguments

Lastly, we look at the arguments. During closing arguments, the prosecutor displayed slides to the jury stating that sexual intercourse went to the rape charges and that sexual contact went to the molestation charges. The prosecutor separated out the rape charges and molestation charges in her closing argument by first describing the sexual intercourse related to the rape of a child counts, which were counts 1 and 3, and then later described the sexual contact related to the child molestation counts, which were counts 2 and 4. The prosecutor also explained that the testimony showed numerous incidences, both before and after OS turned 12 years old, and that the jury needed to be unanimous as to a particular act in order to convict Sanford of the charges.

4.      Testimony, Jury Instructions, and Argument Show No Double Jeopardy Violation

Here, given OS's testimony identifying almost daily abuse by Sanford, both before and after she turned 12 years old; the clear jury instructions, which the jury is presumed to follow; and the prosecutor's presentation in closing of what supports each count all make it manifestly apparent that the State was not seeking to impose multiple punishments for the same offense. *Land*, 172 Wn. App. at 602-03. While the prosecutor's closing remark that "[t]he reason the defendant put his penis in [OS's] mouth was for sexual gratification," may imply that oral to mouth contact also supports molestation, this comment alone does not show the State was attempting to support child rape and child molestation based on the same offense. 2 VRP (Jan. 22, 2019) at 322. Closing argument cannot be considered in isolation. *Mutch*, 171 Wn.2d at 664. Also, Sanford chose to attack OS's credibility at trial rather than challenge the number of incidents. *See Pena-Fuentes*, 179 Wn.2d at 825.

Thus, after considering the evidence, arguments, and instructions, it is clear that it was manifestly apparent to the jury that the State was not seeking to impose multiple punishments for the same offense and that each count was based on a separate act. *See id.* And because the entire record made manifestly apparent that the State was not seeking to impose multiple punishments for the same offense and that each count was based on a separate act, the lack of a separate and distinct jury instruction did not violate Sanford's double jeopardy rights. *Land*, 172 Wn. App. at 602-03. Accordingly, I would affirm Sanford's convictions.



L__, C.J.