**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

**DIVISION II**

| | |
|---|---|
| STATE OF WASHINGTON, | No. 57050-5-II |
| Respondent, | |
| v. | |
| WILLIAM ROBERT NAKAMURA, | UNPUBLISHED OPINION |
| Appellant. | |

CRUSER, J. – In July 2021, William Nakamura was staying at his father's home that was partly rented out to several tenants, including Jermaine Michael Wilson Kelly. One night, Wilson Kelly overheard Nakamura scream at someone to get out and he walked downstairs to investigate. Nakamura verbally threatened Wilson Kelly with a rifle. After Wilson Kelly left the room to call the police, he heard what sounded like a gun discharge into the ceiling and saw smoke coming from the other room. While Wilson Kelly was attempting to exit the premises, Nakamura walked out of the room with the gun in his hand, released the round, reloaded the rifle, and pointed it at Wilson Kelly. Wilson Kelly exited the property unharmed. Nakamura was arrested and charged with assault in the second degree, unlawful possession of a firearm in the second degree, and felony harassment. A jury returned a verdict convicting Nakamura on all charges. Nakamura appeals, arguing that his convictions for second degree assault and felony harassment violate double jeopardy, and he contends that the felony harassment conviction, as the lesser offense, must be vacated.

We hold that Nakamura's convictions for felony harassment and second degree assault violate double jeopardy. We reverse Nakamura's conviction for felony harassment and order the trial court to vacate the felony harassment conviction on remand.

FACTS

I. UNDERLYING INCIDENT

In July 2021, Wilson Kelly, his girlfriend, and another individual named Chrissy Peterson lived in Ernie Nakamura's house as tenants.[1] At the time, Ernie's son, William, resided at the property as well. On the morning of July 8, 2021, Wilson Kelly heard a noise like a door getting kicked in and somebody screaming "get the fuck out, get the fuck out." Verbatim Rep. of Proc. (VRP) at 74. Wilson Kelly ran downstairs to investigate. When Wilson Kelly arrived downstairs, he saw that a door was kicked in and that William Nakamura was sitting on his father's bed with a rifle in his hand.[2] Wilson Kelly told Nakamura that he could not force the roommate to leave because she lived there and asked him why he had a gun. Wilson Kelly told Nakamura to put the gun down and that the two should go outside to fight instead. Nakamura said, "don't make me shoot you." *Id.* at 77. Wilson Kelly told Nakamura that he was "not going to shoot shit" and that he was just going to sit there and run his mouth. *Id.* At this point, Nakamura told Wilson Kelly, "don't make me kill you." *Id.* Wilson Kelly testified that he believed Nakamura was capable of shooting and killing him.

---

[1] Spirit Hale and Orion Adamson were also in the residence at the time of the incident, but it is unclear whether either of them were Ernie's tenants and whether one of them was Wilson Kelly's girlfriend who lived in the house.

[2] The record does not disclose the name of the roommate that Nakamura was yelling at, however it seems it was Chrissy Peterson.

Wilson Kelly then exited the room and called the police. While he was on the phone with dispatch in the kitchen he heard a shot coming from the room that Nakamura and the other roommate were in. Wilson Kelly heard a "boom," saw smoke coming out of the room, and observed that the property's smoke alarm was going off. *Id.* at 78. This led Wilson Kelly to believe that Nakamura fired the gun into the ceiling. The 911 dispatcher told Wilson Kelly to get outside. As Wilson Kelly was walking through the living room to get outside, Nakamura walked out with the gun in his hand, released the round, reloaded the rifle, and pointed it at Wilson Kelly. Wilson Kelly told Nakamura that if Nakamura shot him, the police would shoot. Nakamura then lowered the gun and Wilson Kelly exited the property unharmed. Nakamura was arrested after a six-and-a-half-hour standoff with the police and subsequently charged with second degree assault, second degree unlawful possession of a firearm, and felony harassment.

## II. TRIAL AND JURY INSTRUCTIONS

Two witnesses testified at trial consistent with the facts set forth above: Wilson Kelly and Officer Jason Perkinson of the Aberdeen Police Department. However, the State's case rested primarily on Wilson Kelly's testimony.[3] When the prosecutor asked Wilson Kelly whether he was scared, Wilson Kelly responded, "Hell, yeah. I mean, he just shot the gun in the house. He pointed the gun at me. Hell, yea I was scared." *Id.* at 79-80. In closing argument the State relied on Wilson Kelly seeing Nakamura with the gun, the firing of the gun, and Wilson Kelly's statement saying that he was scared and in fear to prove the second degree assault charge. Likewise, the State pointed to Nakamura's verbal threat to Wilson Kelly, the firing of the gun into the ceiling,

---

[3] Nakamura stipulated to a prior felony conviction of assault in the third degree for the purpose of determining his guilt on the second degree unlawful possession of a firearm charge.

Nakamura's attempt to reload the gun, and the fact that Wilson Kelly said he was scared to prove

felony harassment.

The trial court's instruction 12 defined assault as:

An assault is an act, with unlawful force, done with the intent to create in another apprehension and fear of bodily injury, and which in fact creates in another a reasonable apprehension and imminent fear of bodily injury even though the actor did not actually intend to inflict bodily injury.

Clerk's Papers (CP) at 17.

The trial court's instruction 4 defined assault in the second degree:

A person commits the crime of Assault in the Second Degree when he assaults another with a deadly weapon.

*Id.* at 15. Accordingly, the two elements that the State needed to prove second degree assault were

that (1) "on or about July 8, 2021, William Nakamura assaulted Jermaine Michael Wilson Kelly

with a deadly weapon," and (2) "this act occurred in the State of Washington." *Id.* at 16.

The trial court's instruction 6 defined felony harassment:

A person commits the crime of Harassment when he, without lawful authority, knowingly threatens to cause bodily injury immediately or in the future to another person and when he by words or conduct places the person threatened in reasonable fear that the threat will be carried out and the threat to cause bodily harm consists of a threat to kill the threatened person or another person.

*Id.*

The trial court's instruction 18 stated that to convict Nakamura of the crime of harassment

as charged, the State had to prove each of the following elements of the crime beyond a reasonable

doubt:

1. That on or about July 8, 2021, William Nakamura knowingly threatened to kill Jermaine Michael Wilson Kelly immediately or in the future;
2. That the words or conduct of William Nakamura placed Jermaine Michael Wilson Kelly in reasonable fear that the threat would be carried out;

3. That William Nakamura acted without lawful authority; and
4. That the threat was made or received in the State of Washington.

*Id.* at 18.

### III. VERDICT AND SENTENCING

A jury found Nakamura guilty on all counts. The trial court found that the second degree assault and felony harassment convictions were based on the same criminal conduct for the purposes of sentencing. The trial court reasoned that the testimony demonstrated that it was "pretty clear that it was the same victim, the same time, and, frankly, the same intent. It was to scare the victim, make them believe they were going to be assaulted with a gun, but indeed they were not actually physically assaulted." VRP at 203. Nakamura appeals his convictions for second degree assault and felony harassment.[4]

### DISCUSSION

### I. DOUBLE JEOPARDY

Nakamura argues that his convictions for second degree assault and felony harassment violate double jeopardy by punishing him multiple times for the same offense because the convictions were the same in law and fact. Nakamura requests that we vacate the felony harassment conviction because it is the lesser offense. The State argues that Nakamura's convictions for second degree assault and felony harassment did not violate jeopardy because as charged they were neither the same in law nor in fact. We hold that Nakamura's convictions violate double jeopardy.

---

[4] Nakamura does not appeal his conviction for second degree unlawful possession of a firearm.

No. 57050-5-II

A. LEGAL PRINCIPLES

Under the United States and Washington constitutions, a defendant is provided a constitutional guaranty against double jeopardy. U.S. CONST. amend. V; WASH. CONST. art. I, § 9. The double jeopardy clause contains three guarantees. "First, it protects against a subsequent prosecution for the same offense after an acquittal. Second, it protects against a subsequent prosecution for the same offense after a conviction. Third, it protects against multiple punishments for the same offense, imposed at a single criminal proceeding." *State v. Potter*, 31 Wn. App. 883, 886, 645 P.2d 60 (1982). The protections against double jeopardy under the United States and Washington constitutions are coextensive. *State v. Muhammad*, 194 Wn.2d 577, 600, 451 P.3d 1060 (2019) (plurality opinion). Because the legislature "has the power to define criminal conduct and assign punishment for such conduct," we cannot resolve a double jeopardy question "without determining what punishments the legislative branch has authorized." *State v. Calle*, 125 Wn.2d 769, 776, 888 P.2d 155 (1995).

In making the determination of what punishments are authorized, we first look at the plain language of the statutes at issue to see whether they " 'expressly authorize multiple punishments for conduct that violates more than one statute.' " *Muhammad*, 194 Wn.2d at 617 (McCloud, J., concurring) (quoting *State v. Louis*, 155 Wn.2d 563, 569, 120 P.3d 936 (2005)); *see also State v. Freeman*, 153 Wn.2d 765, 776, 108 P.3d 753 (2005). An example of this, as noted by the concurrence in *Muhammad*, is the burglary anti-merger statute, in which the legislature stated "[e]very person who, in the commission of a burglary shall commit any other crime, may be punished therefor as well as for the burglary, and may prosecuted for each crime separately." RCW 9A.52.050; *Muhammad*, 194 Wn.2d at 617 (McCloud, J., concurring). We undertake this step first

6

because if one or both of the statutes at issue contains express authorization for separate punishment, we need not engage in further efforts at statutory construction. *See In re Pers. Restraint of Orange*, 152 Wn.2d 795, 816, 100 P.3d 291 (2004); *see also Muhammad*, 194 Wn.2d at 617 (McCloud, J., concurring).

However, if we are unable to find such express statutory authorization, we then apply the rule of statutory construction known as the "same evidence" test to determine whether the offenses in question truly are the same. *Muhammad*, 194 Wn.2d at 617 (McCloud, J., concurring). Under the same evidence test, a defendant's double jeopardy rights are violated if the defendant is convicted of offenses that are identical both in fact and in law, and there is no clear evidence of contrary legislative intent. *Calle*, 125 Wn.2d at 777-82. We consider the elements of the crimes as charged and proved, not merely on an abstract articulation of the elements. *Muhammad*, 194 Wn.2d at 620 (McCloud, J., concurring); *Freeman*, 153 Wn.2d at 777; *Orange*, 152 Wn.2d at 817-20. Evidence of legislative intent can be found in the statute's language, legislative history, statutory structure, the fact the two statutes are directed at eliminating different evils, or any other source of legislative intent. *Freeman*, 153 Wn.2d at 773; *Calle*, 125 Wn.2d at 776-81. It is presumed that the legislature did not intend to punish criminal conduct twice when " 'the evidence required to support a conviction upon one of [the charged crimes] would have been sufficient to warrant a conviction upon the other.' " *Freeman*, 153 Wn.2d at 776 (emphasis omitted) (alteration in original) (internal quotation marks omitted) (quoting *Orange*, 152 Wn.2d at 820). We must determine whether each statutory provision requires proof of a fact which the other does not. *See Orange*, 152 Wn.2d at 818.

If, after examining the record and applying the same evidence test we find that the State relied on distinct acts for the prosecution of the separate offenses, then the offenses are not the same in fact and the double jeopardy inquiry ends. *See State v. Peña Fuentes*, 179 Wn.2d 808, 826, 318 P.3d 257 (2014)[5] ; *see also Muhammad*, 194 Wn.2d at 601.

Sometimes an offense is identical in fact but different in law, as in the case of rape when committed against a family member and incest. *Calle*, 125 Wn.2d at 778, 782. The statutes proscribing rape and incest contain different elements and each requires proof of a fact the other does not. *Id.* at 778. In such a case, the offenses are not the same and there is a presumption that multiple punishments are therefore authorized. *Id.* at 780-82. A defendant may overcome this presumption, however, by showing "clear indication of contrary legislative intent" that only a single punishment is intended for crimes arising from the singular act in question. *Id.* at 778.

In *Calle*, the court examined legislative intent and concluded that contrary to the defendant's contention otherwise, the legislature intended separate punishments for rape and incest arising out of a single act. 125 Wn.2d at 780-82. This was so, the court held, because of the different purposes served by the two statutes, the placement of the statutes in different sections of the criminal code, and the fact that rape and incest were punished separately since before statehood. *Id.* at 780-82.

---

[5] On this record, it is clear that the rape count was exclusively based on the two specific acts of penetration, and the molestation counts were exclusively based on the inappropriate behavior other than those two acts of penetration. Because of the clarity in the prosecutor's closing argument, we believe it is 'manifestly apparent' that the jury convicted Peña Fuentes based on separate and distinct acts. *Peña Fuentes*, 179 Wn.2d at 826

A different result was reached by this court in *Potter*, 31 Wn. App. at 886-89. In *Potter*, the defendant was found guilty of both reckless endangerment and reckless driving for the same singular act of driving his car in a reckless manner. 31 Wn. App. at 884-85. We observed that the elements of the two crimes were different:

> [W]e note that reckless endangerment has a general conduct element while reckless driving can arise only out of the operation of a vehicle. If we compare these two elements without reference to what actually occurred, it is apparent that reckless endangerment can be committed without committing reckless driving.

*Id.* at 887–88.

We then noted that despite the apparent dissimilarity of law, when reckless endangerment is committed by the reckless operation of a vehicle the offenses became the same in law: "If, however, the statutory elements are compared in light of what did in fact occur, we observe that proof of reckless endangerment through use of an automobile will always establish reckless driving." *Id.* at 888 (emphasis omitted). We went on to express concern about "the efficacy of the *Blockburger* test when the result turns on such subtle distinctions." *Id.*

Relevant here, where it is difficult to ascertain which act or acts a jury relied on to reach its verdict and the verdict is therefore ambiguous, the rule of lenity applies and we resolve the ambiguity in favor of the defendant. *State v. Booth*, 24 Wn. App. 2d 586, 614, 521 P.3d 196 (2022), *review denied*, 1 Wn.3d 1006 (2023); *see also Muhammad*, 194 Wn.2d at 617, 620-22 (McCloud, J., concurring); *State v. Kier*, 164 Wn.2d 798, 811-14, 194 P.3d 212 (2008) (applying rule of lenity where jury's verdict was ambiguous regarding robbery and assault convictions). It must be clear, after considering the arguments made to the jury, the evidence, and the court's instructions, that it was manifestly apparent to the jury that the state was not seeking dual punishments for same offense to avoid a double jeopardy violation. *State v. Mutch*, 171 Wn.2d 646, 664, 254 P.3d 803

9

(2011). When double jeopardy has been violated, the remedy is to vacate the lesser offense and enter judgment solely on the greater offense. *State v. Weber*, 159 Wn.2d 252, 279, 149 P.3d 646 (2006) (holding that proper remedy for double jeopardy violation is to vacate the conviction carrying lesser sentence); *see also State v. Hughes*, 166 Wn.2d 675, 686 n.13, 212 P.3d 558 (2009). We review a double jeopardy claim de novo because it presents questions of law. *Hughes*, 166 Wn.2d at 681.

With these principles and authorities in mind, we turn to the merits of Nakamura's double jeopardy claim.

B. ANALYSIS

*1. Explicit Legislative Intent*

Neither the felony harassment nor the second degree assault statutes explicitly disclose whether separate punishments are authorized for the same conduct. RCW 9A.46.020(1), (2)(b); RCW 9A.36.021(1)(c). As a result, we apply the same evidence test and then determine whether there is clear evidence of contrary legislative intent to overcome the presumption that these offenses should be punished separately. *Calle*, 125 Wn.2d at 777-82; *see also Muhammad*, 194 Wn.2d at 617-22 (McCloud, J., concurring).

*2. Same in fact*

Nakamura argues that the State relied on the same factual transaction to support both the felony harassment and assault second degree charges. The State disagrees, arguing in its brief that the felony harassment was based on Nakamura saying to Wilson Kelly, while sitting on the bed holding a rifle, " 'don't make me shoot you,' " and " 'don't make me kill you,' " followed by Nakamura shooting the gun toward the ceiling after Wilson Kelly had gone into the kitchen. Br.

of Resp't at 20. The State then argues that the second degree assault was based on Nakamura entering the living room with the rifle in his hand, releasing a round from the gun, and pointing it at Wilson Kelly.

What the State ignores is that in its closing argument to the jury, the prosecutor expressly relied on the same act to support both charges. As to the assault count, the entirety of the State's argument was as follows:

> An assault is an act with unlawful force done with intent to create in another apprehension and fear of bodily injury.
>
> You heard from the victim today, that he saw Mr. Nakamura with the gun, that Mr. Nakamura fired that gun, and that he was scared and that he was in fear. You could - he told you and explained that to you. And you can - you could see how upset he was when he was talking about it.

VRP at 153-54.

> As to the felony harassment count, the entirety of the State's argument was as follows:
>
> Then moving to [Instruction] Number 18, to convict of harassment. That William Nakamura . . . knowingly threatened to kill Jermaine Wilson Kelly in the immediate future. You heard Mr. Wilson Kelly tell you, don't make me shoot somebody, and he fired the gun at the ceiling and tried to reload it. He told you that he threatened his life there. He told you that he – that he was scared. He told you - you know, he even made the comment that he had a gun, of course I was scared.
>
> [Instruction] Number 19 says that threat to communicate is directly or indirectly with the intent to cause bodily injury. Even if there weren't words to say I'm going to shoot you, don't make me shoot someone, he fired a weapon in the direction of somebody else, then went to go reload it, and that would be indirectly threatening somebody.

*Id.* at 155-56.

Thus, the State argued to the jury that Nakamura's act in firing the gun at the ceiling while in the bedroom was the act that formed the basis of both the assault and the harassment charge. Importantly, it is the argument to the jury that is relevant to our analysis, not the argument now

11

made on appeal. *See Peña Fuentes*, 179 Wn.2d at 825-26; *State v. Sanford*, 15 Wn. App. 2d 748, 755-58, 477 P.3d 72 (2020). At minimum, the State's differing assertions of the act it relied on to support each count requires us to apply the rule of lenity and conclude that if, in fact, the State was relying on separate acts for each count, that was not made manifestly apparent to the jury. *Booth*, 24 Wn. App. 2d at 614; *Sanford*, 15 Wn. App. 2d at 756-58. Indeed, as it relates to the assault charge, the State made no mention of what occurred in the living room or Nakamura's pointing of the gun at Wilson Kelly after he came out of the bedroom.

Moreover, the testimony at trial further belies the State's argument on appeal. Wilson Kelly testified that he did not believe that Nakamura planned to shoot him when Nakamura said "don't make me shoot you." VRP at 77. And while Wilson Kelly testified that he thought Nakamura was *capable* of shooting and killing him, that is distinct from fearing that Nakamura would actually shoot him. When the State asked Wilson Kelly about his subjective fear, Wilson Kelly stated "Hell, yeah. I mean, he just shot the gun in the house. He pointed the gun at me. Hell, yeah. I was scared." *Id.* at 79-80. Notably, the shooting of the gun into the ceiling occurred in the bedroom and the pointing of the gun occurred in the living room. They were separate acts. The State made no attempt to differentiate when the felony harassment stopped and the assault began.

These ambiguities must be resolved in Nakamura's favor because the State's evidence did not make it manifestly apparent to the jury that the felony harassment and second degree assault counts were based on separate and distinct conduct. *Mutch*, 171 Wn.2d at 664; *Sanford*, 15 Wn. App. 2d at 756-58; *see also Peña Fuentes*, 179 Wn.2d at 825-26. We must conclude that the State

relied on the same factual transaction to support both charges. *Sanford*, 15 Wn. App. 2d at 756-58. We next examine whether the convictions are the same in law.[6]

*3. Same in law*

To convict Nakamura of felony harassment, the State had to prove beyond a reasonable doubt that he knowingly threatened to kill Wilson Kelly and that Wilson Kelly was placed in reasonable fear that the threat to kill would be carried out. RCW 9A.46.020(1), (2)(b). In contrast, to convict Nakamura of second degree assault as charged in this case, the State had to prove beyond a reasonable doubt that Nakamura assaulted Wilson Kelly with a deadly weapon. RCW 9A.36.021(1)(c).

Thus, in the abstract, second degree assault and felony harassment are not the same in law because each crime has different elements and requires proof of a fact which the other does not. *Compare* RCW 9A.36.021(1)(c), *with* RCW 9A.46.020(1), (2)(b). For example, the use of a deadly weapon is not required to prove felony harassment, while it is required to prove the means of second degree assault charged in this case. *Compare* CP at 16, *with* CP at 15. Additionally, felony harassment requires a threat to kill, as well as subjective fear on the part of the victim that the threat to kill will be carried out, whereas second degree assault merely requires an act that creates in another a reasonable apprehension and imminent fear of bodily injury. *Compare Id.* at 16, *with*

---

[6] Although the jury was instructed that a separate crime was charged in each count and they must decide each count separately, they were not instructed that the felony harassment and assault second degree charges must be based on separate and distinct acts. *See Sanford*, 15 Wn. App. 2d at 754 (noting that absence of separate and distinct acts instruction is a double jeopardy violation if it was not " 'manifestly apparent to the jury that the State [was] not seeking to impose multiple punishments for the same offense' and that each count was based on a separate act." (emphasis omitted) (alteration in original) (internal quotation marks omitted) (quoting *Mutch*, 171 Wn.2d at 664)).

*Id.* at 17. There is no requirement for second degree assault that the victim fear death, and no requirement that the victim's fear be reasonable. *Id.* at 15-17.

However, our inquiry is not limited to an examination of the abstract elements of the offenses as charged. We must also consider the elements of the crimes as *proved*. *Muhammad*, 194 Wn.2d at 620 (McCloud, J., concurring); *Freeman*, 153 Wn.2d at 777. For example, in *Orange*, the court refused to generically compare the elements of the two charged crimes to determine whether the convictions were the same in law. 152 Wn.2d at 817-20. There the court concluded that the defendant's convictions for first degree attempted murder and first degree assault were the same in law because the evidence required to support the conviction for first degree attempted murder was sufficient to convict the defendant of first degree assault. *Id.* at 820.

Here, like in *Orange*, Nakamura's convictions were the same in law because the evidence required to support the conviction of felony harassment was sufficient to convict Nakamura of second degree assault as *proved* by the State. *Id.* The evidence required to support the conviction of felony harassment was sufficient to convict Nakamura of second degree assault because it is unclear whether the jury relied on the same acts to convict Nakamura of felony harassment and second degree assault. The jury may have relied on the gun shot and Nakamura's act of then reloading and pointing the gun at Wilson Kelly to convict him of both crimes. We apply the rule of lenity to resolve the ambiguity. *Booth*, 24 Wn. App. 2d at 614; *see also Muhammad*, 194 Wn.2d at 617, 620-22 (McCloud, J., concurring); *Kier*, 164 Wn.2d at 811-14. Under the rule of lenity, we assume that the jury relied on the same acts to convict Nakamura of both felony harassment and second degree assault. *Booth*, 24 Wn. App. 2d at 614; *see also Kier*, 164 Wn.2d at 811-14. Therefore, we conclude that under the unique circumstances of this case Nakamura's convictions

for felony harassment and second degree assault were the same in law after considering the elements of the crimes as proved.

### 4. No contrary legislative intent

Having concluded, after application of the same evidence test, that under the unique facts of this case the offenses are the same, and that dual punishments are therefore presumptively not authorized, we must next consider whether there is clear evidence of contrary legislative intent showing that these offenses should be punished separately. *Muhammad*, 194 Wn.2d at 620 (McCloud, J., concurring); *Calle*, 125 Wn.2d at 780.

Here there is no clear evidence demonstrating a legislative intent to punish felony harassment and assault separately when they are predicated on the same distinct act and cause the same distinct harm. Importantly, the crimes as charged and proven in this case address the same societal concern: threatening another person with a gun and inflicting terror on the victim. Finally, we discern no independent purpose or effect for these offenses under these unique facts. *See State v. Mandanas,* 163 Wn. App. 712, 718, 262 P.3d 522 (2011).[7] We do not find the clear evidence necessary to overcome the strong presumption that the two offenses are the same in this case. We conclude that the legislature did not intend, under these particular facts, that multiple punishments should be imposed for felony harassment and second degree assault.

---

[7] We note that the *Mandanas* Court opined that the felony harassment and second degree assault statutes seek to address different societal harms. *Mandanas*, 163 Wn. App. at 719-720. In that case, the defendant pointed a gun at the victim and threatened to kill him, and also repeatedly pistol whipped the defendant on the head with the gun. *Id.* at 715, 721. The court went on to note that the crimes in that case were predicated on distinct acts, making it distinguishable from this case. *Id.* at 721. It is unclear why the *Mandanas* Court felt compelled to discuss the same evidence test and legislative intent given their holding that the crimes were predicated on separate and distinct acts.

No. 57050-5-II

Therefore, we conclude that Nakamura's convictions for second degree assault and felony harassment violate double jeopardy because they were the same offense and there is no clear evidence of contrary legislative intent to punish these offenses separately.

CONCLUSION

We hold that Nakamura's convictions for second degree assault and felony harassment violate double jeopardy. Because the judgment and sentence reveal that assault in the second degree is the more serious offense of the two, we reverse Nakamura's conviction for felony harassment and order it vacated on remand.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

CRUSER, J.

We concur:

LEE, J.

GLASGOW, C.J.