# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>      Respondent,<br><br> v.<br><br>CRISPÍN RENDÓN TAPIA,<br><br>      Appellant. | No.  57477-2-II<br><br><br><br>UNPUBLISHED OPINION |

LEE, J. — Crispín Rendón Tapia appeals his convictions for first and second degree child molestation, arguing that deficient instructions allowed the jury to punish him multiple times for the same conduct, a double jeopardy error.  Rendón Tapia also challenges various community custody condition fees and the $500 crime victim penalty assessment (CVPA) imposed at sentencing.

Because the record shows the State made it manifestly apparent to the jury that it was not seeking multiple punishments for the same acts, there is no double jeopardy error.  Thus, we affirm Rendón Tapia's convictions.  However, we remand to the trial court with instructions to strike certain legal financial obligations (LFOs) from Rendón Tapia's judgment and sentence consistent with this opinion.

No. 57477-2-II

FACTS

In 2020, E.Z.-V.[1] told law enforcement that Rendón Tapia sexually abused her as a child. The State initially charged Rendón Tapia with several child sex crimes committed against E.Z.-V. During trial, the State filed a second amended information charging Rendón Tapia with first degree child rape (count 3), first degree child molestation (count 4), second degree child rape (count 5), and second degree child molestation (count 6).[2] The charging period for the first degree child rape and first degree child molestation counts were the same, and the charging period for the second degree child rape and second degree child molestation counts were the same. The State also alleged the following aggravating circumstances for each count: use of a position of trust to facilitate the crime and an ongoing pattern of sexual abuse.

A.    E.Z.-V.'S TRIAL TESTIMONY

At trial, E.Z.-V. testified to multiple instances of abuse. Relevant here, E.Z.-V. testified that when she was 9 or 10, she, her mother, and Rendón Tapia moved into Oakbrook Apartments. During this time, Rendón Tapia would enter E.Z.-V.'s room while she was asleep or feigning sleep, remove whatever "bottoms" E.Z.-V. had on, and lick her vaginal area. Verbatim Rep. of Proc. (VRP) (Aug. 3, 2022) at 233. While E.Z.-V. could not remember the first time this happened, she described an incident she remembered clearly: she was in her mother's room and Rendón Tapia

---

[1] We use initials to protect the victim's identity and privacy interests. *See* General Order 2023-2 of Division II, *Using Victim Initials* (Wash. Ct. App.), available at: https://www.courts.wa.gov/appellate_trial_courts/?fa=atc.genorders_orddisp&ordnumber=2023-2&div=II.

[2] The State also charged an additional two counts of first degree child molestation. Those charges are not at issue in this appeal.

2

woke her by removing her underwear and licking her vaginal area. E.Z.-V. remembered this particular instance because she was wearing dress-like pajamas her mother had gifted her. E.Z.-V. also testified that while she lived at the Oakbrook Apartments, Rendón Tapia would get on top of her and rub his pelvic area against hers and try to kiss her.

About a year after moving into the Oakbrook Apartments, E.Z.-V., her mother, and Rendón Tapia moved into a house "near Heritage." VRP (Aug. 3, 2022) at 239. When asked whether she remembered a specific instance where Rendón Tapia licked her while living in the house, E.Z.-V. recounted an incident where she was watching YouTube in the living room. Rendón Tapia entered the room, so E.Z.-V. pretended to be asleep, at which point Rendón Tapia carried her to his bedroom, took off her underwear, and licked her vaginal area. E.Z.-V. also testified that while she could not remember a specific instance at the Heritage house where Rendón Tapia got on top of her and rubbed against her, she did "remember . . . that would happen sometimes." VRP (Aug. 3, 2022) at 249.

B.    JURY INSTRUCTIONS

The trial court gave the jury a separate to-convict instruction for each count. The first and second degree rape instructions required proof of "sexual intercourse" between E.Z.-V. and Rendón Tapia. Clerk's Papers (CP) at 48, 50. An instruction defined "sexual intercourse" as "any act of sexual contact between persons involving the sex organs of one person and the mouth or anus of another whether such persons are of the same or opposite sex." CP at 54. The jury instructions for first and second degree molestation required proof of "sexual contact" between E.Z.-V. and Rendón Tapia. CP at 45, 52. An instruction defined "sexual contact" as "any touching

3

of the sexual or other intimate parts of a person done for the purpose of gratifying sexual desires of either party or a third party." CP at 55.

The trial court also instructed the jury that it must decide each count separately, and that while multiple acts of molestation and rape were alleged, the jury had to agree unanimously as to which acts had been proved. The trial court did not instruct the jury that each of its guilty findings must be based on separate and distinct acts.

## C.     CLOSING ARGUMENTS

During closing arguments, the State listed each count for the jury, specifically explaining which alleged acts corresponded to which counts. The State explained that "sexual contact" was the key element for the first degree child molestation charges, and that "[s]exual contact is different from that in rape of a child. This is the touching of intimate parts." VRP (Aug. 4, 2022) at 408.

The State argued, "Count 3: Rape of a child in the first degree. This count is the Oakbrook Apartment pajama incident that [E.Z.-V.] told you about." VRP (Aug. 4, 2022) at 411. The State then defined "sexual intercourse" for the jury as "sexual contact . . . involving . . . the sex organs of one person and the mouth of another" and argued that when E.Z.-V.'s underwear was pulled off and she felt "wet in her vaginal area," that satisfied the definition. VRP (Aug. 4, 2022) at 411-12.

Next, the State argued, "Count 4: Child molestation in the first degree. While living in the Oakbrook Apartments, [E.Z.-V.] told you that there was an incident of rubbing with Mr. Tapia" where he got "on top of her . . . and rub[bed] himself on her" while trying to kiss her. VRP (Aug. 4, 2022) at 412, 413. The State contended that "this is that sexual contact again, which is the any touching of sexual or other intimate parts of a person, done for the purpose of gratifying sexual desires of either party." VRP (Aug. 4, 2022) at 413.

4

The State then continued, "Count 5 is rape of a child in the second degree. After the Oakbrook Apartments, [E.Z.-V.] told you that they moved to the house near Heritage. This count is specific to the incident of abuse that happened on the couch." VRP (Aug. 4, 2022) at 413. The State explained that the "key element" of this charge was "sexual intercourse," arguing that Rendón Tapia had sexual intercourse with E.Z.-V. when he carried her from the couch to his bedroom and licked her. VRP (Aug. 4, 2022) at 414.

Finally, the State argued, "Count 6: Child molestation in the second degree. Again, this was at the Heritage house, and this was another incident of rubbing that [E.Z.-V.] told you about." VRP (Aug. 4, 2022) at 415. The State defined "sexual contact" for the jury once again and argued that Rendón Tapia made sexual contact with E.Z.-V. "at this house" when he rubbed his pelvic area against hers. VRP (Aug. 4, 2022) at 415.

Rendón Tapia's closing argument attacked E.Z.-V.'s credibility, stressing there was only "[o]ne single witness, the alleged victim, who can tell you that any sort of abuse occurred." VRP (Aug. 4, 2022) at 427. Rendón Tapia argued that E.Z.-V. provided no evidence corroborative of her claims, and suggested that E.Z.-V. fabricated her accusations.

D.    JURY DELIBERATION, VERDICT, AND SENTENCING

As the jury deliberated, it asked the trial court the following question: "What is the difference between 1st and 2nd degree molestation and Rape[?]" CP at 32. In response, the trial court directed the jury to the separate to-convict instructions it had been provided, stating those instructions would delineate the differences in what the State had to prove for each charge. The trial court also urged the jury to review and read its instructions and definitions "as a whole." VRP (Aug. 4, 2022) at 440. The jury did not submit any more questions to the trial court.

The jury found Rendón Tapia guilty as charged. Rendón Tapia was sentenced to an indeterminate sentence of 280 months to life.[3] The trial court also found Rendón Tapia indigent based on his "financial circumstances," and stated it would "impose only the mandatory minimum, $500 victim . . . penalty—assessment, and restitution, if any, to be set." VRP (Sep. 16, 2022) at 456.

The trial court imposed several community custody conditions. Relevant here, community custody condition 12 requires Rendón Tapia to "submit to polygraph examinations at the request of DOC and/or your sexual deviancy treatment provider" and to bear the cost of any requested polygraph examination. CP at 186. Finally, the trial court did not check the box on the judgment and sentence that addresses whether Rendón Tapia would be expected to pay community custody supervision fees or whether such fees would be waived due to his indigency.

Rendón Tapia appeals.

## ANALYSIS

A. DOUBLE JEOPARDY

Rendón Tapia argues that the jury instructions permitted multiple punishments for the same criminal act and, therefore, violated double jeopardy.[4] We disagree.

---

[3] Rendón Tapia's original judgment and sentence contained a scrivener's error that the trial court corrected in response to a motion from the State. This opinion refers to the corrected judgment and sentence.

[4] Rendón Tapia did not object to the jury instructions below, but double jeopardy claims can be raised for the first time on appeal. *State v. Mutch*, 171 Wn.2d 646, 661, 254 P.3d 803 (2011).

1.      Legal Principles

"'The constitutional guaranty against double jeopardy protects a defendant . . . against multiple punishments for the same offense.'" *State v. Mutch*, 171 Wn.2d 646, 661, 254 P.3d 803 (2011) (alteration in original) (quoting *State v. Noltie*, 116 Wn.2d 831, 848, 809 P.2d 190 (1991)); *see* U.S. CONST. amend. V; WASH. CONST. art. I, § 9. We review double jeopardy claims de novo. *Id.* at 661-62.

To convict a defendant of child rape, the State must prove there was "sexual intercourse" with a child.[5] RCW 9A.44.073(1), .076(1). Sexual intercourse includes penetration of the vagina or anus, but also "any act of sexual contact between persons involving the sex organs of one person and the mouth or anus of another." RCW 9A.44.010(14)(b), (c).

To convict a defendant of child molestation, the State must prove there was "sexual contact" with a child.[6] RCW 9A.44.083(1), .086(1). "Sexual contact" means "any touching of the sexual or other intimate parts of a person done for the purpose of gratifying sexual desire of either party or a third party." RCW 9A.44.010(13).

While child rape and child molestation are separate offenses, "double jeopardy potentially is implicated when the defendant is charged with both child rape and child molestation based only on oral-genital contact rather than on penetration." *State v. Sanford*, 15 Wn. App. 2d 748, 753, 477 P.3d 72 (2020). As Division One has explained:

---

[5] First degree child rape differs from second degree child rape in the age of the victim and the defendant at the time of the offense. RCW 9A.44.073(1), .076(1).

[6] First degree child molestation differs from second degree child molestation in the age of the victim at the time of the offense. RCW 9A.44.083(1), .086(1).

> [W]here the only evidence of sexual intercourse supporting a count of child rape is evidence of sexual contact involving one person's sex organs and the mouth or anus of the other person, that single act of sexual intercourse, if done for sexual gratification, is both the offense of molestation and the offense of rape. In such a case, the two offenses are not separately punishable. They are the same *in fact and in law* because all the elements of the rape as proved are included in molestation, and the evidence required to support the conviction for molestation also necessarily proves the rape.

*State v. Land*, 172 Wn. App. 593, 600, 295 P.3d 782 (emphasis in original), *review denied*, 177 Wn.2d 1016 (2013).

The trial court must give a separate and distinct acts instruction when there is a possibility that the jury could convict the defendant of both child rape and child molestation based on the same act of oral/genital contact. *Sanford*, 15 Wn. App. 2d at 753. A separate and distinct acts instruction informs the jury that "they are to find 'separate and distinct acts' for each count when the counts are identically charged." *State v. Hayes*, 81 Wn. App. 425, 431, 914 P.2d 788, *review denied*, 130 Wn.2d 1013 (1996).

Here, E.Z.-V. testified that Rendón Tapia either engaged in oral/genital contact or got on top of her and rubbed his pelvic area against her. Thus, there is a potential for the jury to convict Rendón Tapia for child rape and child molestation based on the same act of oral/genital contact. Because the trial court did not include a separate and distinct acts instruction, there is a potential double jeopardy violation.

However, failure to give a separate and distinct acts instruction is not a per se double jeopardy violation; rather, "it simply means that the defendant *potentially* received multiple punishments for the same offense." *Mutch*, 171 Wn.2d at 663 (emphasis in original). In such a situation, we must decide whether it was "'manifestly apparent to the jury that the State [was] not

seeking to impose multiple punishments for the same offense' and that each count was based on a separate act." *Id.* at 664 (emphasis omitted) (alteration in original) (quoting *State v. Berg*, 147 Wn. App. 923, 931, 198 P.3d 529 (2008)). In doing so, we consider "the evidence, arguments, and instructions" presented at trial. *Id.*

2.      No Double Jeopardy Violation

Rendón Tapia argues that the record fails to show that it was "manifestly apparent that the jury based its convictions for counts 3 and 4 and for counts 5 and 6 on separate and distinct acts." Br. of Appellant at 18. We disagree.

In its closing argument, the State made it manifestly apparent to the jury that the State was not seeking to impose multiple punishments for the same act. The State explicitly distinguished between child molestation and child rape, stating that while sexual contact was a key element of child molestation, the sexual contact required for child molestation "is different from that in rape of a child." VRP (Aug. 4, 2022) at 408. The State also repeated the definition for sexual intercourse when discussing the child rape charges. The State highlighted the testimony about oral/genial contact "as the crucial element proving [the] rape" charges. *See Land*, 172 Wn. App. at 602. At no point did the State argue that the alleged acts of oral sex supported the child molestation charges. *See Sanford*, 15 Wn. App. 2d at 757 (finding "the prosecutor . . . did not make it clear in closing argument that the State was relying on different acts to prove rape and . . . molestation" where prosecutor "expressly relied" on same acts of oral/genital contact "to support both the rape . . . and . . . molestation charges").

Moreover, the State discussed each count separately and the distinct evidence that supported each count. *See State v. Reedy*, 26 Wn. App. 2d 379, 390-91, 527 P.3d 156, *review*

*denied*, 1 Wn.3d 1029 (2023); *see also State v. Peña Fuentes*, 179 Wn.2d 808, 825, 318 P.3d 257 (2014) (holding that it was "manifestly apparent that the convictions were based on separate acts because the prosecution made a point to clearly distinguish between the acts that would constitute rape of a child and those that would constitute child molestation"). In its closing arguments, the State linked each count with specific acts E.Z.-V. described, along with details of the specific location where the acts occurred and what E.Z.-V. was doing or wearing at the time.

Rendón Tapia argues that "even if the prosecutor's argument considered in isolation could support an argument that the jury was clear that it must rely on separate and distinct acts," the jury's question during deliberations "destroys any notion that the prosecutor's argument made it manifestly apparent that the jury could not rely on the same acts" for the child molestation and child rape charges. Br. of Appellant at 21. We disagree.

Here, the jury asked the trial court, "What is the difference between 1st and 2nd degree molestation and Rape[?]" CP at 32. At best, the question is ambiguous as to what the jury meant by "the difference." Furthermore, the trial court responded to the question by instructing the jury to read the separate to convict instructions and the instructions as a whole. After being so instructed by the trial court, there were no further questions from the jury. Presumably, whatever question the jury might have had as to the charges was clarified by the trial court's instruction for the jury to review the jury instructions.

Given the record as a whole, it was manifestly apparent that the State was not seeking to impose multiple punishments for the same offenses but was seeking a conviction on each count based on separate and distinct acts. Thus, we affirm Rendón Tapia's convictions.

B.     CHALLENGED COMMUNITY CUSTODY CONDITIONS AND LFO

Rendón Tapia asks that the $500 CVPA and requirement that he pay for polygraph testing be stricken from his judgment and sentence. Rendón Tapia also asks that this court "direct the trial court to amend the judgment and sentence to specify that no community custody supervision fees are authorized." Br. of Appellant at 26. The State concedes that "the polygraph fee provision, the victim penalty assessment, and any Department of Corrections supervision fee should be stricken from the judgment and sentence." Br. of Resp't at 14. We accept the State's concession and remand to the trial court with instructions to strike the CVPA fee, strike the requirement that Rendón Tapia pay for polygraph testing, and clarify that Rendón Tapia is not required to pay community custody supervision fees.

Effective July 1, 2023, RCW 7.68.035(4) prohibits courts from imposing the CVPA on indigent defendants. *See State v. Ellis*, 27 Wn. App. 2d 1, 16, 530 P.3d 1048 (2023), *pet. for rev. filed*, No. 102378-2 (Sept. 13, 2023). Although this amendment took effect after Rendón Tapia's sentencing, it applies to cases pending on appeal. *Id.*

To have the CVPA stricken, Rendón Tapia must have been found indigent as defined in RCW 10.01.160(3). RCW 7.68.035(4). For purposes of RCW 10.01.160(3), a defendant is indigent if they meet the criteria in RCW 10.101.010(3)(a)-(c). A person is indigent under RCW 10.101.010(3)(c) if they "[r]eceiv[e] an annual income, after taxes, of one hundred twenty-five percent or less of the current federally established poverty level."

Here, the sentencing court determined that Rendón Tapia was indigent because he "receives an annual income, after taxes, of one hundred twenty-five percent or less of the current federally established poverty level." CP at 174. Thus, Rendón Tapia is indigent pursuant to RCW

10.101.010(3)(c), and we remand to the sentencing court with instructions to strike the $500 CVPA fee from his judgment and sentence.

As for the polygraph fee provision, Rendón Tapia argues that the provision should be stricken based on his indigency and the trial court's intention to only impose mandatory fees. The State agrees that the polygraph fee provision should be stricken from his judgment and sentence. We accept the State's concession and remand with instructions to strike the polygraph fee provision.

As for the community custody supervision fees, the trial court did not indicate whether Rendón Tapia would pay supervision fees or whether they would be waived due to his indigency. Effective July 1, 2022, the imposition of community custody supervision fees is no longer statutorily authorized. LAWS OF 2022, ch. 29, § 8(2)(d); *see* RCW 9.94A.703. Thus, on remand, the trial court should clarify on Rendón Tapia's judgment and sentence that he will not be responsible for community custody supervision fees.

## CONCLUSION

Because it was manifestly apparent that the State was not seeking multiple punishments for the same conduct, the failure to give a separate and distinct acts jury instruction did not violate double jeopardy. Thus, we affirm Rendón Tapia's convictions. However, we remand to the trial court with instructions to strike the CVPA fee, strike the requirement that Rendón Tapia pay for polygraph testing, and clarify that Rendón Tapia is not required to pay community custody supervision fees.

No. 57477-2-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Lee, J.

We concur:

Maxa, P.J.

Che, J.